# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## AT COVINGTON

**CIVIL CASE NO. 19-4-DLB-CJS**

**PATRICK DUNN**                                                                 **PLAINTIFF**

**v.**                                    **MEMORANDUM OPINION AND ORDER**

**ADAMS, STEPNER, WOLTERMANN**
**& DUSING, PLLC, et al.**                                                     **DEFENDANTS**

* * * * * * * * * * * * * * * * * *

This matter is before the Court on Motions to Dismiss (Docs. # 15 and 16) brought by Defendants Adams, Stepner, Woltermann, & Dusing, PLLC, and Zimmer Motor, Inc. Both Motions having been fully briefed, (Docs. # 17, 18, and 19), they are now ripe for the Court's review. For the reasons set forth herein, the Motions to Dismiss are **denied**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On September 28, 2016, the son of Plaintiff Patrick Dunn got into an automobile accident while driving his family's 2014 Jeep Grand Cherokee. (Doc. # 6 at 2). The next day, Dunn took the Jeep to Defendant Zimmer Motor, Inc. to have it repaired; he was assured the repairs would be completed in a timely manner. *Id.* However, the Jeep repairs took over four months. *Id.* at 3. Dunn was notified on January 26, 2017[1] that the

---

[1]     The Amended Complaint alleges that the car accident occurred in September of 2016, the car repairs were completed, the car was picked up, and documents were allegedly signed in January of *2018*, and Zimmer Motor demanded payment for the work in May of 2017. (Doc. # 6 at 2–3). Defendant Adams, Stepner, Woltermann, & Dusing points out that the Amended Complaint contains a typographical error as to the date the vehicle repairs were completed—the correct date is January *2017*. (Doc. # 16-1 at 4). The attachments to the Amended Complaint support that the car repairs were completed and the car was picked up in January of 2017; the attachments include the state court complaint which indicates that the vehicle was picked up in

Jeep was ready for pickup, but when he went to retrieve the car on Friday, January 27, 2017, Dunn was informed that there was no one around who could release the Jeep and he would have to return the following Monday. *Id.* When Dunn returned on Monday, January 30, 2017 to retrieve the Jeep from Zimmer Motor, he was told that he would have to sign a "Written Confirmation" in order to have the vehicle released. *Id.* Dunn attempted to speak to Rich Zimmer, the agent in charge of operations, but was told Zimmer was unavailable. *Id.* at 2–3. Dunn refused to sign any documents, but eventually the car was released to him. *Id.* at 3. Dunn made numerous attempts to contact Rich Zimmer following the release of the car but was unable to reach him. *Id.*

On March 23, 2017, Defendant Adams, Stepner, Woltermann, & Dusing, PLLC (ASW&D), counsel for Zimmer Motor, made a written demand to Dunn for payment of $14,648.99 owed for the Jeep repairs. *Id.* The demand included a document, purportedly signed by Dunn on January 27, 2017, entitled "written confirmation of the amount owed" ("Written Confirmation 1"). *Id.* at 4; (Doc. # 6-2). Dunn, however, claims he signed no such document; Dunn's attorney informed ASW&D twice that the document was a forgery. (Doc. # 6 at 4).

Despite this, Zimmer Motor filed suit in Boone County Circuit Court on January 16, 2018, demanding payment of the $14,648.99. *Id.* The "pleadings included a copy of Written Confirmation No. 1, and other exhibits." *Id.* As part of discovery, Zimmer Motor

---

January of 2017, (Doc. # 6-4 at 1–3), and the invoice for repairs, which is dated February of 2017, (Doc. # 6-4 at 5–7). The Court finds that the January 2018 dates in the Amended Complaint are a clear typographical error, but that "this error is not fatal to the Complaint" as the Amended Complaint is still discernable. *See Berry v. Office of the Fayette Cty. Sheriff*, No. 5:14-cv-356-DCR, 2014 WL 6390174, at *2 (E.D. Ky. Nov. 14, 2014). For clarity's sake, the Court will use the apparently correct dates, rather than the dates alleged in the Amended Complaint, in its recitation of the facts.

produced two written confirmation documents (again producing Written Confirmation 1 and providing a second document the Court will refer to as "Written Confirmation 2"), both of which allegedly were signed by Dunn, but which Dunn "confirmed . . . were forgeries." *Id.* Additionally, Rich Zimmer and his employee Amanda Dorger gave conflicting accounts about who Dunn spoke to when he picked up the Jeep, who actually signed the confirmations, and who witnessed the signing of the confirmations, among other things. *Id.* at 4–5. Dunn alleges that "[i]n sum, when confronted with the forged signatures, Rich Zimmer and Amanda Dorger each point to each other as the person before whom Plaintiff or his wife signed the written confirmation" and also alleges that Zimmer and Dorger's accounts of what happened "are irreconcilably inconsistent with one another." *Id.* at 5. Dunn claims this lends support to his allegation that Zimmer Motor forged Dunn's signature on the written confirmations; Dunn also claims that Zimmer Motor put forth a falsified invoice in support of the Boone County Circuit Court case. *Id.* at 6.

After consulting with an expert who "reported that the [two written confirmations] were not signed by the same person," Dunn attempted to amend his state court pleadings to add a counterclaim. *Id.* Specifically, Dunn wanted to allege that Zimmer Motor's actions violated the Kentucky Consumer Protection Act (KCPA). *Id.* The Motion to Amend was denied, however, and Plaintiff ultimately settled the state case by paying the amount demanded by ASW&D, after which Zimmer Motor dismissed the claims against Dunn. *Id.* at 7.

In light of these events, Dunn brought this action in federal court on January 15, 2019. (Doc. # 1). Dunn alleges that Zimmer Motor violated the KCPA and that ASW&D violated the Federal Debt Collection Practices Act (FDCPA) and seeks compensatory,

statutory, and punitive damages.  *Id.* at 7–10.  After Dunn filed an Amended Complaint on February 11, 2019, *id.* at 1–10, both Defendants moved to dismiss the Amended Complaint.  (Docs. # 15 and 16).  Following briefing, the Motions became ripe on April 30, 2019.  (Docs. # 17, 18 and 19).

## II.     ANALYSIS

### A.     Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows parties to move for dismissal of a complaint when it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12.  In order "[t]o survive a motion to dismiss, a complaint must provide 'a short and plain statement of the claim showing that the [plaintiff] is entitled to relief.'"  *Doe v. Baum*, 930 F.3d 575, 580 (6th Cir. 2018) (quoting Fed. R. Civ. P. 8(a)(2)).  In reviewing a complaint, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded factual allegations as true, and examine[s] whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017) (internal quotations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).  Allegations are plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The allegations do not need to show that liability is probable, but the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

In reviewing a 12(b)(6) motion to dismiss, the Court "may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the

case, and exhibits attached to the defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein." *DeJohn v. Lerner, Sampson & Rothfuss*, No. 1:12CV1705, 2012 WL 6154800, at *2 (N.D. Ohio Dec. 11, 2012) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

### B. ASW&D Motion to Dismiss

In the Amended Complaint, Patrick Dunn alleges that ASW&D "use[d] . . . forged documents and adulterated invoices" in support of the debt-collection action in Kentucky state court in violation of the FDCPA. (Doc. # 6 at 10). Specifically, Dunn alleges that these actions violate the FDCPA prohibition on debt collectors "using false, deceptive, or misleading representations or means in connection with the collection of any debt, including the use or distribution of any written communication which creates a false impression as to its source, authorization, or approval." *Id.* at 9.

In support of its Motion to Dismiss the FDCPA claim against it, ASW&D appears to puts forth two main arguments—(1) that the claim is barred by the FDCPA's one-year statute of limitations, and (2) that the Plaintiff has failed to alleged facts that state a plausible claim for relief under the FDCPA. (Doc. # 16-1 at 4–9). Each will be addressed in turn. Additionally, in response to ASW&D's Motion to Dismiss, Plaintiff Dunn argues, among other things, that the claim brought against ASW&D is not barred by res judicata. (Doc. # 17 at 4–5). Defendant ASW&D, however, does not appear to have explicitly argued that the claim against it should be dismissed because it was barred by res judicata. *See* (Docs. # 16-1 and 19). Rather, some of ASW&D's comments in its initial Motion seem to suggest that ASW&D may be asserting a res-judicata argument. *See, e.g.*, (Doc. # 16-1 at 5) (suggesting that "Plaintiff is seeking to relitigate the underlying case," and the

"order of dismissal in the underlying case operates as an adjudication on the merits"). Out of an abundance of caution, the Court will also review whether the claim against ASW&D is barred by res judicata.

### 1. Statute of Limitations

The Court first considers the threshold issue of whether the FDCPA claim brought against ASW&D is barred by the statute of limitations. (Doc. # 16-1 at 7–9). A motion to dismiss "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Jodway v. Orlans, PC*, 759 F. App'x 374, 379 (6th Cir. 2018) (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). Such a motion should be granted, however, "if the allegations in the complaint affirmatively show that the claim is time-barred." *Id.* (quoting *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013)). As statute of limitations "is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run." *Id.* (quoting *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001)). Unfortunately for ASW&D, it has not made such a showing here.

The FDCPA requires that "an action to enforce any liability" under 15 U.S.C. § 1692e, the at-issue subsection, *see infra*, must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); *see also Filinger v. Lerner Sampson & Rothfuss*, 624 F. App'x 338, 340 (6th Cir. 2015). ASW&D asserts that the Plaintiff alleged as early as March of 2017 that the document used in the state debt-collection action was forged but that Dunn did not commence this lawsuit until over one year later. (Doc. # 61-1 at 7–8). As a result, ASW&D claims that "the applicable one-

year time period has long since run to give this court any jurisdiction to hear Plaintiff's First Amended Complaint". (Doc. # 61-1 at 7–8).

ASW&D's argument is misguided. "[W]hen a debt collector initiates a deceptive, abusive, or otherwise unfair lawsuit, there is no doubt that the FDCPA claim—insofar as it is viable—accrues on that date." *Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 F. App'x 268, 273 (6th Cir. 2016) (quoting *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 258 (6th Cir. 2014)); *see also Jodway*, 759 F. Appx. at 379–80. The initiation of such a suit is a "discrete, immediately actionable event." *Slorp*, 587 F. App'x at 258. Here, Plaintiff alleges that debt collector[2] ASW&D put forth fraudulent documentation in support of its state debt-collection action in violation of the FDCPA. (Doc. # 6 at 10). Thus, Plaintiff alleges that the state court action was based on misrepresentations, *see generally* (Doc. # 6 at 8–10), and the Court finds that such a suit could be considered deceptive or unfair. Accordingly, a FDCPA claim would accrue on the date of the filing of the state court debt-collection action. *See Smith*, 658 F. App's at 273. The state court action was filed on January 16, 2018. (Doc. # 6 at 4). As this federal action was filed on January 15, 2019, less than one year after the filing of the state court action, the FDCPA claim against ASW&D is not barred by the statute of limitations.

### 2.    *Failure to State a Claim*

Next, the Court turns to ASW&D's argument that the Plaintiff's allegations do not state a plausible claim for relief under the FDCPA. ASW&D argues that a FDCPA claim is not stated because ASW&D's collection action sought to recover the amount owed,

---

[2]    Plaintiff alleges that ASW&D is a debt collector under the FDCPA, (Doc. # 6 at 9), and ASW&D does not appear to dispute that characterization at this point in the litigation. (Doc. # 16-1 at 6) (assuming for the purposes of argument in support of the Motion that it is a debt collector).

which was ultimately recovered via settlement, and that "no additional interest, fee or other charge of any kind was collected by ASW&D from plaintiff." (Doc. # 16-1 at 4–7); *see also* (Doc. # 19 at 3–4).

In order to "state a claim under the FDCPA, a plaintiff must show that a defendant violated one of the substantive provisions of the FDCPA while engaging in debt collection activity."[3] *Clark v. Lender Processing Servs.*, 562 F. App'x 460, 465–66 (6th Cir. 2014) (citing *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 459–60 (6th Cir. 2013)). "The FDCPA governs debt collection in or out of court; it does not allow debt collectors to use litigation as a vehicle for abusive and unfair practices that the Act forbids." *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 451 (6th Cir. 2014). In stating a plausible claim under the FDCPA, because "[t]he FDCPA is a strict-liability statute[] [a] plaintiff need not prove knowledge or intent . . . and does not have to have suffered actual damages." *Id.* at 448–49 (internal citations omitted). As a result, "the risk of penalties [is placed] on the debt-collector that engages in activities that are not entirely lawful, rather than exposing consumers to unlawful debt-collector behavior without a possibility of relief." *Id.* at 449.

---

[3]     It also must be alleged that the Plaintiff is a consumer within the meaning of the Act, the Plaintiff incurred the debt for consumer purposes, and the Defendant is a debt collector. *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012); *see also* 15 U.S.C. § 1692a (defining "consumer" and "debt collector" under the FDCPA). Reading the Amended Complaint in the light most favorable to him, it appears that Dunn has adequately pled these other three requirements for a valid FDCPA claim. *See* (Doc. # 6) (pleading that Dunn was obligated to pay a debt; the debt that arose from the car repairs was for personal, family, or household purposes; and ASW&D is a debt collector as defined by the Act). ASW&D does not appear to dispute this. (Doc. # 16-1 at 6) (declining to discuss the first and second factors of a valid FDCPA claim, and indicating that ASW&D shall be considered a debt collector for the purposes or argument but not presenting any arguments that it should not be considered a debt collector under the FDCPA). At this stage, it appears that only the question of whether the actions violated the FDCPA is at issue. *See* (Docs. # 16-1, 17 and 19).

Here, the pleadings and briefing in this case are not models of clarity. ASW&D appears only to initially argue that ASW&D's actions did not violate § 1692f(1) of the FDCPA, (Doc. # 16-1 at 7), which prohibits "[t]he collection of any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such an amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Defendant ASW&D also appears to argue later, however, that there was no FDCPA violation because Dunn did not allege "any facts that establish knowledge on the part of ASW&D that the document alleged by [Dunn] to be a forgery was in fact not signed by [Dunn]"; ASW&D provides no legal support for the argument. (Doc. # 19 at 1–2). On the other hand, Plaintiff appears to allege and argue that ASW&D violated § 1692e of the FDCPA, (Doc. # 6 at 8–10); *see also* (Doc. # 17 at 8–10), which prohibits debt collectors from making false, deceptive, or misleading representations in connection with debt collection. 15 U.S.C. § 1692e.

Stating a claim under § 1692e in the context of litigation requires a plaintiff to put forth plausible allegations that a debt collector, during the litigation to collect on the debt, made false, deceptive, or misleading representations. 15 U.S.C. § 1692e; *see also* *Stratton*, 770 F.3d at 449 (citing *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995)) (explaining that litigation is debt-collection activity). "Consistent with the [FDCPA's] expansive reach, [§ 1692e] provide[s] a list of unlawful conduct 'without limiting the application of' [the] section's broad prohibition of 'false or misleading representations.'" *Id.* at 450 (quoting 15 U.S.C. § 1692e). In other words, the list is not exhaustive and "[s]ection[] 1692e . . . 'enable[s] the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed.'" *Id.* (quoting S. Rep. 95-382, at 4).

There are some limitations, however, on the expansive nature of the prohibitions in 15 U.S.C. § 1692e.  For example, "a statement must be more than just misleading, it 'must be *materially* false or misleading.'"  *Clark*, 562 F. App'x at 466 (quoting *Wallace*, 683 F.3d at 326).  "The materiality standard . . . means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated customer."  *Id.* (quoting *Wallace*, 683 F.3d at 326–27).  When making this determination, however, the Court is required to consider the representations from the point of view of the least sophisticated customer in order to ensure that "the FDCPA protects all consumers, the gullible as well as the shrewd."  *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 29 (6th Cir. 2007) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)).

A variety of misleading representations have been found to be violations of § 1692e's prohibition of false, deceptive, or misleading misrepresentations in connection with debt collection by the Sixth Circuit.  For example, misrepresenting or falsely representing the name of the creditor holding the debt is an FDCPA violation under § 1692e.  *Wallace*, 683 F.3d at 327 ("[A] clearly false representation of the creditor's name may constitute a 'false representation . . . to collect or attempt to collect any debt' under Section 1692e.").  Additionally, "impersonating a public official, falsely representing that unpaid debts will be referred to an attorney, and misrepresenting the amount of debt owed" are also violations of the same subsection.  *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 331 (6th Cir. 2006).

Most relevant to this case, district courts within the Sixth Circuit have found that filing false or misleading documents in support of a debt-collection action is a violation of

§ 1692e of the FDCPA. Specifically, "claims based upon a debt collector's filing of a complaint to collect a debt and attaching an affidavit to the complaint that allegedly misrepresented the amount of the debt or the debt collector's legal claim upon the debt" are sufficient to survive a motion to dismiss. *Delawder v. Platinum Fin. Servs. Corp.*, 443 F. Supp. 2d 942, 947–48 (W.D. Ohio 2005) (finding such an allegation to plausibly state a claim under FDCPA § 1692e(2)). Other district courts have similarly held that the attachment of false documents to a debt-collection complaint violates the FDCPA. *See Hill v. Javitch, Block & Rathbone, LLP*, 574 F. Supp. 2d 819 (S.D. Ohio 2008) (citing *Harvey*, 453 F.3d 324) (explaining that "a debt collector will only be liable where it files a **false document** or false affidavit with the complaint, makes false claims regarding the debt, or fails to make a reasonable investigation into whether or not the debt existed" and suggesting that if plaintiff had made an allegation that false documents were filed with the state court complaint then the claim would not be dismissed); *Williams v. Javitch, Block & Rathbone, LLP*, 480 F. Supp. 2d 1016, 1023 (S.D. Ohio 2007) (finding allegations that "the affidavit contained false or deceptive representations about the status and character of the debt in question" to not be "so fatally flawed that [plaintiff's] claims under Sections 1692e and e(10) must be dismissed"). The Sixth Circuit seems to support this conclusion as well. *See Harvey*, 453 F.3d at 331–32 (seeming to affirm the district court's dismissal of the claims under § 1692e in part because there was no allegation that something included with the state court complaint was false).

Here, Plaintiff alleges that Written Confirmation 1, "which was purportedly signed by Plaintiff" was a forgery because he did not actually sign the document. (Doc. # 6 at 3–4). That allegedly-false document was then included in the pleadings filed by ASW&D on

behalf of Zimmer Motor's in the state court debt-collection action.  *Id.* at 4; *see also* (Doc. # 6-4 at 3) (indicating that ASW&D represented Zimmer Motor in the state court action and filed the state court complaint on Zimmer Motor's behalf).  A forgery is, most relevantly, defined as "[a] false or altered document made to look genuine by someone with the intent to deceive."  *Forgery*, BLACK'S LAW DICTIONARY (11th ed. 2019).  Thus, by specifically alleging that the Written Confirmation 1 is forged because he did not sign it, Dunn is effectively alleging that the document was false or deceptive.  Dunn also alleges that an additional false document, in the form of a falsified invoice, was attached to the state court complaint.  (Doc. # 6 at 6).  Considering all of the allegations in the Complaint as true, as is required at this stage, *Hill*, 878 F.3d at 203, the Court finds Dunn has stated a plausible claim for relief under FDCPA § 1692e because he alleged that two false, deceptive documents were attached to the state court debt-collection complaint.  *See supra*.

ASW&D disputes that a plausible claim for relief was stated because "Plaintiff has not alleged with specificity any facts that establish knowledge on the part of ASW&D that the document alleged by him to be a forgery was in fact not signed by him."  (Doc. # 19 at 1).  Such an allegation is not necessary, however, to make out a claim for relief under the FDCPA as it is a strict-liability statute and "a plaintiff need not prove knowledge." *Stratton*, 770 F.3d at 448–49.  Thus, the Court finds that Dunn has stated a plausible claim for relief under the FDCPA.

### 3. *Res Judicata*

Finally, out of an abundance of caution, the Court will consider whether the FDCPA claim brought against ASW&D is barred by res judicata.  "Federal courts are required to

'give the same preclusive effect to a state court judgment as another court of that State would give."' *Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 460 (6th Cir. 2013) (quoting *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986)).  In other words, "[i]f an individual is precluded from litigating a suit in state court by traditional principles of res judicata, he is similarly precluded from litigating the suit in federal court.  We look to the state's law to assess the preclusive effect it would attach to that judgment."  *Ohio ex rel Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011) (internal quotations and citations omitted).  Thus, the Court must determine whether this claim would be barred by res judicata in Kentucky.  *Id.*; *Tyler*, 736 F.2d at 460*.*

Res judicata in Kentucky is made up of two parts—(1) claim preclusion and (2) issue preclusion.  *Yeoman v. Ky., Health Policy Bd.*, 983 S.W.2d 459, 464–65 (Ky. 1998); *see also Miller v. Admin. Office of Courts*, 361 S.W.3d 867, 871 (Ky. 2011) (explaining that res judicata, in a strict sense, means claim preclusion but is now seen as "an umbrella doctrine" containing both issue preclusion and claim preclusion).  "Claim preclusion bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action," while "[i]ssue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action."  *Yeoman*, 983 S.W.2d at 465 (citations omitted).

In order for claim preclusion "to bar further litigation," the parties and claims must be identical, and the claim must have been previously, finally adjudicated on the merits.  *Id.*  In other words, claim preclusion only applies when the parties to the first action are the same as the parties to the second action.  *Miller*, 361 S.W.3d at 872.  Issue preclusion similarly requires the same issue to presented in both the first and second lawsuits.

*Yeoman*, 983 S.W.2d at 465. Under issue preclusion, however, the parties do not have to be identical in each action" so "[w]hen a person wishes to prevent the litigation of the same issues but was not a party to the prior litigation, the courts may apply the doctrine of issue preclusion." *Miller*, 361 S.W.3d at 872.

Here, the doctrine of res judicata in Kentucky does not preclude the FDCPA claim against ASW&D. Claim preclusion does not bar the claim brought against ASW&D because that state action was between Zimmer Motor and Dunn; ASW&D was not a party to the state court action. *See* (Doc. # 6-4). As the parties in this federal case in which claim prelusion is asserted are not the same as the parties in the original case, claim preclusion does not bar the FDCPA claim against ASW&D.[4] *Yeoman*, 983 S.W.2d at 465. Issue preclusion also does not bar the claim because the issue of whether ASW&D violated the FDCPA was not litigated in the underlying state court action. "Issue preclusion requires the issue decided in the earlier litigation to be the same as the one currently before the court." *Miller*, 361 S.W.3d at 874. Accordingly, the FDCPA claim against ASW&D is not barred by the principles of res judicata. In sum, as the FDCPA claim against ASW&D states a plausible claim for relief and is not barred by the statute of limitations or res judicata, ASW&D's Motion to Dismiss is **denied**.

---

[4]    ASW&D seems to also suggest that the claim is barred because it was a compulsory counterclaim during the state court action. (Doc. # 16-1 at 6). Kentucky Rule of Civil Procedure 13.01 only requires that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party." Here, ASW&D was not an opposing party in the state court action, so the claim is also not barred as an unpled compulsory counterclaim. *See Smith v. Discover Bank*, No. 6:14-cv-151-KKC, 2015 WL 1021423, at *1 (E.D. Ky. Mar. 9, 2015).

## C.    Zimmer Motor's Motion to Dismiss

Next, the Court turns to the Motion to Dismiss filed by Zimmer Motor.  (Doc. # 15). In his Amended Complaint, Dunn alleges that Zimmer Motor violated the KCPA because it committed "unfair, false, misleading, or deceptive acts or practices" throughout its interaction with Dunn.  (Doc. # 6 at 7–8).  In support of dismissal, Zimmer Motor argues that (1) this Court does not have subject-matter jurisdiction (in the form of supplemental jurisdiction) over the KCPA claim, and (2) even if there were subject-matter jurisdiction, the claim is barred by res judicata.  (Doc. # 15-1).  The Court will consider each argument in turn.

### 1.    *Supplemental Jurisdiction*

Plaintiff argues that the Court does not have supplemental jurisdiction over the claim against Zimmer Motor because "Zimmer Motor, Inc's joinder in [Dunn's] claim against ASW&D is permissive at best."  *Id.* at 6.  Supplemental jurisdiction allows a district court to have jurisdiction over a claim that does not satisfy the traditional jurisdictional requirements for federal court.  *Watson v. Cartee*, 817 F.3d 299, 303 (6th Cir. 2016).  A district court has supplemental jurisdiction over state claims arising from the same case or controversy as claims over which the federal court has original jurisdiction.  28 U.S.C. § 1367(a).  This includes "claims that involve the joinder or intervention of additional parties."  *Id.*  "[D]istrict courts have 'broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims,'" but in determining whether supplemental jurisdiction should be exercised, judges should consider "judicial economy, convenience, fairness, and comity."  *Pinney Dock & Transport Co. v. Penn Cent. Corp.*, 196 F.3d 617,

620 (quoting *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996)).

Claims are considered to be part of the same case or controversy for the purposes of supplemental jurisdiction "when they derive from a common nucleus of operative facts." *Watson*, 817 F.3d at 303 (quoting *Harper v. AutoAlliance Int'l Inc.*, 392 F.3d 195, 209 (6th Cir. 2004)). "This requirement is met when state and federal law claims arise from the same contract, dispute, or transaction." *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 583 (6th Cir. 2011). In making the determination of whether claims arise from the same nucleus of operative fact, courts will consider whether the claims will "require proof of different facts, will involve different witnesses, and apply different law." *Raymer v. Western & Southern Life Ins. Co.*, 2013 WL 4875029, at *3 (E.D. Ky. Sept. 11, 2013).

Here, the court finds that the two claims before this Court arise from the same dispute and share a common set of operative facts. In the KCPA claim against Zimmer Motor, Dunn alleges that it committed "unfair, false, misleading, or deceptive acts or practices" when it "misled [Dunn] about the progress of the [vehicle] repairs," forged Dunn's signature on Written Confirmation 1, and used the forged document in state court litigation to attempt to collect from Dunn. (Doc. # 6 at 7–8). In sum, Dunn alleges Zimmer Motor undertook an "unfair, false, misleading and/or deceptive scheme to collect amounts due under the contract for consumer services." *Id.* at 8. Similarly, in the FDCPA claim, Dunn alleges that ASW&D used the document allegedly forged by Zimmer Motor in support of its debt-collection litigation in state court, which was "false, deceptive, or misleading." *Id.* at 8–10. The two claims clearly share at least one common issue of

fact—whether Written Confirmation 1 was forged.  As this factual issue appears to be key to both claims, the Court finds that judicial resources are best served by determining the forgery issue in the same matter.  Additionally, the claims both arise out of the same transaction and dispute over the vehicle repairs and ensuing debt.  Accordingly, the Court will exercise supplemental jurisdiction over the KCPA claim.[5]

### 2.    *Res Judicata*

Finally, the Court considers Zimmer Motor's apparent argument that the KCPA claim is barred by res judicata because the three elements of claim preclusion are met,[6] and the KCPA claim was a compulsory counterclaim that should have been brought as part of the state court action.  (Doc. # 15-1 at 4–5).  The latter argument will be addressed first.

### a.    Compulsory Counterclaim

As discussed *supra*, the Court must determine whether the KCPA claim would be barred by res judicata in Kentucky.  *Tyler*, 736 F.3d at 460.  In Kentucky, res judicata not

---

[5]      In reality, while Zimmer Motor claims to be arguing that the court lacks subject-matter jurisdiction, in reviewing the substance of the argument it appears that Zimmer Motor is really suggesting that it is an improperly joined party in this case.  *See* (Doc. # 15-1 at 6–7).  Specifically, Zimmer Motor seems to be suggesting that it is not a necessary party under the compulsory joinder rule and does not meet the requirements to be permissively joined.  *Id.* (citing F. R. Civ. P. 19 and 20).  Even if, arguendo, joinder of Zimmer Motor is not compulsory, Zimmer Motor is properly joined under the permissive joinder rule because there are "question[s] of law or fact common to all defendants [that] will arise in the action."  Fed. R. Civ. P. 20(a)(2).  Specifically, the factual issue of whether Written Confirmation 1 was indeed forged applies to the claims against both Defendants, so permissive joinder is appropriate.

[6]      Plaintiff references three elements of res judicata—"identity of the parties; identity of the two causes of action, and action must be decided on its merits."  (Doc. # 15-1 at 4) (citing *City of Louisville v. Louisville Prof'l. Firefighters Ass'n*, 813 S.W.2d 804, 806 (Ky. 1991); *Newman v. Newman*, 451 S.W.2d 417, 419 (Ky. 1970)).  As discussed *supra*, res judicata in Kentucky encompasses two concepts—claim preclusion and issue preclusion.  *Yeoman*, 983 S.W.2d at 464–65.  The three elements discussed by Plaintiff are the elements required for claim preclusion.  *Id.* at 465.

only precludes previously decided claims, but also prevents the later bringing of related claims "which the parties, exercising reasonable diligence" could have previously pled. *Holbrook v. Shelter Ins. Co.*, 186 F. App'x 618, 621 (6th Cir. 2006) (quoting *Combs v. Prestonburg Water Co.*, 84 S.W.2d 15, 18 (1935)). "Compulsory counterclaims are 'claims which should have been raised in prior litigation.'" *Id.* (quoting *DLX, Inc. v. Kentucky*, 381 F.3d 511, 520 (6th Cir. 2004)). Thus, an unpled compulsory counterclaim would be barred in subsequent litigation under res judicata. *Id.*

At issue is whether the KCPA claim was a compulsory counterclaim in the state court action. Plaintiff appears to admit that, had the claim been a compulsory counterclaim, it would be barred by res judicata. (Doc. # 17 at 5). Dunn argues, however, that the claim is not barred because it was a permissive counterclaim. *See id.* at 5–6. The Court agrees.

"The question of whether the [plaintiff's] claims are compulsory counterclaims which should have been pleaded in the earlier . . . state court action is a question of state law." *Discover Bank*, 2015 WL 1021423, at *1 (quoting *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987)). In Kentucky, a claim is compulsory against an opposing party when "it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Ky. R. Civ. Pro. 13.01. As a sister court in this district has done, the Court will apply the "logical relation test" to determine whether a counterclaim is compulsory. *Discover Bank*, 2015 WL 1021423, at *2 (explaining that Kentucky does not appear to have announced a separate test to determine if a counterclaim is compulsory and applying the federal test as the Kentucky compulsory counterclaim rule mirrors the federal rule). "Under that test, the court must consider

'whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims.'" *Id.* (quoting *Sanders v. First Nat'l Bank & Trust Co.*, 936 F.2d 273, 277 (6th Cir. 1991)).

In this matter, the initial state court action was an action to collect the debt that Dunn allegedly owed to Zimmer Motor. (Doc. # 6-4 at 1–3). The action here, however, focuses on Defendants' alleged misleading practices under the FDCPA and KCPA. (Doc. # 6 at 7–10). The issues of fact raised by the claims in each forum are different—the state court action focuses on the existence of the debt, while the KCPA claim here addresses actions taken by Zimmer Motor in its attempt to collect that debt. In other words, the claim under the KCPA "does not involve the obligations created by the underlying debt contract. While the debt claim and the KCPA claim may arise from the same debt and there may be some overlap of the issues raised in the two actions, the actions are not logically related." *Discover Bank*, 2015 WL 1021423, at *3 (collecting cases finding similar claims to be permissive rather than compulsory). Thus, the KCPA claim was not a compulsory counterclaim in state court. Accordinlgy, it is not barred by res judicata on that ground.

### b.    Claim Preclusion

Finally, the Court will consider whether the KCPA claim is barred in this federal action by claim preclusion. Again, it must be determined whether the claim would be barred by Kentucky law. *Tyler*, 736 F.2d at 460; *Ohio ex rel. Boggs*, 655 F.3d at 519. Kentucky claim preclusion "bars the litigation of 'entire claims that were brought or should have been brought in a prior action.'" *Ventas Inc. v. HCP, Inc.*, 647 F.3d 291, 304 (6th Cir. 2011) (quoting *Morgan v. Standard Elec. Co., Inc.*, 62 Fed. App'x 110, 111 (6th Cir.

2003)). In other words, it "bars a party from re-litigating a previously litigated cause of action and entirely bars a new lawsuit on the same cause of action." *Yeoman*, 983 S.W.2d at 465. A claim is barred by claim preclusion when the parties and causes of action are identical, and the claim was previously decided on the merits. *Ventas Inc.*, 647 F.3d at 304.

Zimmer Motor argues that the KCPA claim is barred by res judicata because all three requirements for claim preclusion are met. (Doc. # 15-1 at 4). Specifically, Dunn and Zimmer Motor were both parties to the state court action. *Id.* Additionally, Dunn sought leave to file an amended answer to include a KCPA counterclaim in state court, but his request was ultimately denied as moot after briefing of the Motion. *See Zimmer Motor, Inc. v. Dunn*, Case No. 18-CI-72 (Boone County Circuit Court); *see also* (Docs. # 15-1 at 4 and 17 at 3). Zimmer Motor claims that the KCPA claim was brought in both actions, and that the denial of Dunn's request to file the KCPA counterclaim was an adjudication of that claim on the merits; thus, it argues that the claim preclusion requirements have been met. (Doc. # 15-1 at 4). Zimmer Motor, however, fails to present any case law supporting its conclusion that the denial of Dunn's request to add the counterclaim was an adjudication of the claim on the merits. *Id.* at 4–5. Thus, at issue is whether the state court's denial of Dunn's leave to file amended pleadings to bring the KCPA permissive counterclaim served as an adjudication of the KCPA claim on the merits.

There is limited jurisprudence considering whether, under Kentucky law, the denial of leave to amend pleadings counts as an adjudication on the merits of a claim that a party sought to include in its amended pleadings. Most relevant is a 2004 Kentucky

Supreme Court case which found that res judicata did not bar the litigation of a cross-claim in a new action, after a previous trial court denied a motion for leave to file that cross-claim in an earlier action. *Buis v. Elliott*, 142 S.W.2d 137, 140–41 (Ky. 2004). The Court explained that the "[a]ppellant was not required to file a cross-claim in the original action as cross-claims in Kentucky are *merely permissive* and *not compulsory*. As a result, the rights and liabilities between [the parties] were not, nor were they required to be, determined by 'an existing final judgment rendered upon the merits' in the original action." *Id.* at 141 (emphasis added) (internal citations omitted). That court went on to explain that "[a]ppellant did not have the opportunity to actually litigate the issue of the Elliotts' possible liability to Appellant for indemnification or breach of contract," so res judicata did not bar the claim as part of a later action. *Id.*

The Kentucky Court of Appeals in recent years has suggested that *Buis* does not stand for the general proposition that "*res judicata* does not exist in cases where a leave to amend was denied in the original action." *Connor v. Patton*, No. 2007-CA-00575-MR, 2008 WL 162875, at *2 (Ky. Ct. App. Jan. 18, 2008). Rather, its application is more limited. For example, the reasoning of *Buis* has not been extended to allow plaintiffs to bring additional claims, which could have been asserted at the outset of the initial suit; in other words, *Buis* has not impacted the general rule that plaintiffs are not permitted to split causes of action arising from the same situation among multiple suits. *See, e.g.*, *Bowing v. Hass*, No. 3:07-cv-32-KKC, 2010 WL 3825467, at *7 (E.D. Ky. Sept. 23, 2010) ("Nothing in *Buis* or the subsequent cases construing it supports the conclusion that its holding effected [sic] any sea change in longstanding Kentucky jurisprudence that requires a plaintiff to assert all claims arising out of a cause of action in a single initial

proceeding."); *Connor*, 2008 WL 162875, at *2–3 (distinguishing *Buis* because it involved multiple parties and holding that "[i]n the case before us, [the plaintiff] was required to bring all claims for relief stemming from the same cause of action . . [and] was given the opportunity to litigate all of her claims but simply failed to do so in her original complaint"). It does not appear, however, that any courts have considered the application of *Buis* to a situation where a *defendant* is precluded from bringing a *permissive* counterclaim in the initial action.

Here, the Court must determine whether Dunn's failed attempt to bring the KCPA permissive counterclaim when he was a defendant in the state court action precludes Dunn from now litigating the KCPA claim in this Court. The Court finds that *Buis*, which considers the application of res judicata to a *permissive claim* that could have been brought by a *defendant*, to be more analogous to the case at bar than cases where res judicata is used to bar claims that could have been brought by a *plaintiff*. Accordingly, the Court will apply the reasoning of *Buis* to determine whether Dunn is precluded from bringing the KCPA claim in this federal action. *Buis* suggests that if a defendant's attempt to bring a permissive counterclaim is precluded by a court, the later litigation of that counterclaim is not precluded by res judicata. *Buis*, 142 S.W.2d at 140–41. Accordingly, the state court's denial of Dunn's leave to amend his pleadings to add the KCPA claim, is not considered an adjudication on the merits of that claim and does not preclude Dunn from bringing the KCPA claim in the present action. Like in *Buis*, Dunn was not required to bring the permissive KCPA claim in the underlying state court action and, as far as the Court can tell from the pleadings and underlying state court record,[7] did not have the

---

[7] After briefing on the Motion to Amend Dunn's Answer, the Motion was denied as moot. *Zimmer Motor, Inc. v. Dunn*, Case No. 18-CI-72 (Boone County Circuit Court). Nothing in the

opportunity to "actually litigate" the possibility of Zimmer Motor's liability to Dunn under the KCPA. *Buis*, 142 S.W.2d at 141. As a result, the Court finds that Dunn's KCPA claim against Zimmer Motor's is not barred by claim preclusion.[8] Thus, as the KCPA claim is neither barred on jurisdiction nor res-judicata grounds, Zimmer Motor's Motion to Dismiss is **denied**.

## III. CONCLUSION

Accordingly, for the reasons set forth herein, **IT IS ORDERED** as follows:

(1)    The Motion to Dismiss filed by Defendant Zimmer Motor, Inc (Doc. # 15) is **DENIED**;

(2)    The Motion to Dismiss filed by Defendant Adams, Stepner, Woltermann, & Dusing, PLLC (Doc. # 16) is **DENIED**;

(3)    **Within twenty-one (21) days from the date of the entry of this Order**, the parties, by counsel, shall meet, either in person or by telephone, to discuss the nature and basis of the Plaintiff's claims and Defendant's attendant defenses, and the

---

briefing of the Motion to Amend, indicates that the KCPA claim was considered on the merits by the state court. *Id.*

[8]    Zimmer Motor seems to suggest for the first time in its reply that, even if the KCPA claim is not barred by res judicata, the Court should consider barring it under "waiver and estoppel." (Doc. # 18 at 3) (quoting *Tyler*, 736 F.3d at 461). Aside from the fact that new arguments should not be raised in a reply, *EP Acquisition Corp. v. MaxxTrade, Inc.*, No. 5:09-cv-193-KSF, 2011 WL 4102114, at *5 (E.D. Ky. Sept. 14, 2011) (declining to consider new arguments raised in a reply brief), Zimmer Motor puts forth no specific argument as to why waiver and estoppel might apply in this case. (Doc. # 18 at 2–4). Rather, it merely quotes from *Tyler* without explaining how the reasoning from *Tyler* should guide the Court's action. *See id.* Regardless, the propositions Zimmer Motor gleaned from *Tyler* do not appear to apply to the case at bar. The quoted language from *Tyler*, *id. at* 3, appears to support a general holding from *Tyler* that "[i]n certain cases, barring an unraised compulsory counterclaim might be appropriate even if *res judicata* does not apply." 736 F.3d at 460. As the KCPA claim was a *permissive* counterclaim at the state court level, and Dunn attempted to raise the claim during that litigation, the court finds the language from *Tyler* to be inapplicable.

possibilities for a prompt settlement or resolution of the case, to make or arrange for the disclosures required by Rule 26(a)(1) of the Federal Rules of Civil Procedure, and to develop a proposed discovery plan. *See* Fed. R. Civ. P. 26(f); and

(4)     **Within ten (10) days after the meeting**, the parties shall file a joint status report containing:

(a)     the proposed discovery plan;

(b)     the parties' estimate of the time necessary to file pretrial motions;

(c)     the parties' belief as to whether the matter is suitable for some form of alternative dispute resolution such as mediation;

(d)     the parties' estimate as to the probable length of trial; and

(e)     whether the parties will consent to the jurisdiction of a Magistrate Judge (Smith) for all further proceedings, including trial, pursuant to 28 U.S.C. § 636(c).  Consent forms are attached to this Order and forms signed by all parties' counsel should be filed no later than the date counsels' joint status report is due.  If all parties, by counsel, so consent, the Clerk of Court shall reassign this matter to the appropriate Magistrate Judge without the necessity of further order of the Court.  L.R. 73.1(c).

Should the parties find that a joint report is not possible, the parties shall each file individual reports which the Court shall entertain for the purposes of setting out its Scheduling Order or other appropriate Order.

This 19th day of November, 2019.



Signed By:
*David L. Bunning*
United States District Judge

K:\DATA\ORDERS\Cov2019\19-04 MTD.docx