**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL CASE NO. 19-4-DLB-CJS**

**PATRICK DUNN**                                                                                           **PLAINTIFF**

**v.**                          **MEMORANDUM OPINION AND ORDER**

**ADAMS, STEPNER, WOLTERMANN**
**& DUSING, PLLC**                                                                                    **DEFENDANT**

* * * * * * * * * * * * * * * * *

**I.    INTRODUCTION**

Plaintiff Patrick Dunn became embroiled in a dispute with Zimmer Motors over the repair of his 2014 Jeep Grand Cherokee. Upset by the length of time it took Zimmer Motors to repair the vehicle, Plaintiff refused to pay the amount Zimmer Motors billed him. Zimmer Motors retained the law firm of Adams, Stepner, Woltermann & Dusing, PLLC ("ASW&D") to collect the debt from Plaintiff. After sending a demand letter, ASW&D sued to recover the debt in state court, providing in support of its case a "written confirmation" from Dunn promising to pay the amount owed. Plaintiff claims the written confirmation has his forged signature on it. Plaintiff eventually settled the action in state court and thereafter sued ASW&D in federal court under the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff argues that ASW&D's use of the purportedly forged written confirmation violates the FDCPA's prohibition on the use of a "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The parties have filed cross-Motions for Summary Judgment. (Docs. #

1

55 and 56).  As explained below, Plaintiff cannot recover under the FDCPA because no reasonable jury could find that ASW&D meets the statutory definition of a "debt collector."  Accordingly, ASW&D's Motion is **granted** and Plaintiff's Motion is **denied**.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On September 28, 2016, Plaintiff Patrick Dunn's son got into an automobile accident while driving his parents' 2014 Jeep Grand Cherokee.  (Doc. # 56-1 ¶¶ 4, 8).  The following day, Dunn and his wife took the Jeep to Zimmer Motors, Inc. for repair.  (*Id.* ¶ 9).  Before dropping off the vehicle, Zimmer Motors claims that Dunn signed a blank payment authorization form that was then submitted to Dunn's insurance company, Liberty Mutual.  (Docs. # 54-7 at 31-34 and 56-6).  The document, which appears in the record, shows Dunn's signature with the name of Liberty Mutual's claims adjuster, Tim Black, listed below.  Dunn, for his part, denies signing any documents related to services at Zimmer Motors and furthermore alleges that his signature was forged.  (Doc. # 56-1 at ¶¶ 20, 26).  On October 7, 2016, Liberty Mutual sent Dunn a check for $14,648.99, which was made out to Sanitech LLC—Dunn's business and the insured under the policy.  (Docs. # 53-2 and 55-3 at 2).

Despite Zimmer Motors' assurances that the repairs would be done quickly, (Doc. # 56-1 ¶ 10), months went by, and Dunn called Zimmer Motors repeatedly to express his frustration at the pace of the repairs.  (Docs. # 54-7 at 25-26 and 56-1 ¶ 7).  Finally, on January 26, 2017, around four months after Zimmer Motors had taken possession of Dunn's car, employee Rich Zimmer called Dunn to inform him that he could pick up his car the next day.  (Doc. # 56-1 ¶ 13).  The parties dispute what happened next.  Dunn says that when he showed up on Friday, January 27th, he was told that Rich Zimmer was

in a meeting and could not release the car to Dunn that day. (*Id.* ¶ 14). Dunn further alleges that he returned on Monday, January 30th, and this time was told by Zimmer Motors employee Amanda Dorger that he would have to sign a "written confirmation" acknowledging that he owed $14,648.99 for the cost of the repairs. (Docs. # 56-1 ¶ 15, 54-7 at 14-15, and 56-3). According to Dunn, he refused to sign any documents on January 30, 2017 and demanded that Dorger release the Jeep, which she did. (Doc. # 56-1 ¶ 16).

In contrast, Defendant asserts that Dunn came in only once—on January 27, 2017—and signed the written confirmation before taking the Jeep. The "written confirmation" appears in the record and is identical to the payment authorization form Dunn purportedly signed when he dropped off the vehicle, except that the name of the car and the amount owed are filled in and Dunn's insurance information is missing. (Doc. # 56-3). Notably, Dunn's signature is dated January 27, 2017, three days before Dunn claims to have retrieved the Jeep. (*Id.*). The written confirmation is also signed by Rich Zimmer. (*Id.*). Although Rich Zimmer asserts that he released the vehicle only after Dunn signed the written confirmation, Zimmer admits that Dorger would have been the one to have witnessed Dunn's signature, because Zimmer was dealing with another customer at the time. (Doc. # 54-3 at 23-24, 28). Dorger herself does not recall whether Dunn signed the form, although she does not recall his refusing to sign the form either. (Doc. # 54-7 at 23). As with the earlier form purportedly signed when he dropped off the Jeep, Dunn denies ever having signed the second "written confirmation" and alleges that his signature was forged. (Doc. # 56-1 ¶¶ 16, 20).

3

In the ensuing months, Dunn attempted to contact Zimmer to settle the dispute but was unsuccessful. (*Id.* ¶ 17). On March 23, 2017, Zimmer Motors, through its counsel, ASW&D, sent Dunn a written demand for payment of $14,648.99 related to the repairs done on the Jeep. (*Id.* ¶ 18). The demand letter was accompanied by the "written confirmation" purportedly signed by Dunn the day he retrieved the Jeep from Zimmer Motors. (Doc. # 56-2). After receiving Zimmer Motors' letter, Dunn informed ASW&D attorney, Scott Guenther, that his signature on the written confirmation was forged. (Docs. # 55-3 at 10 and 56-1 ¶ 20). Shortly thereafter, Dunn's attorney, Christian Dennery, contacted Guenther to negotiate a settlement. (Doc. # 55-3 at 12-13). Both sides negotiated throughout April 2017 but were unable to reach an agreement. (*Id.* at 12-21). On January 10, 2018, Dunn's counsel made a final offer and again informed ASW&D of the alleged forgery. (Doc. # 56-4 at 1). Six days later, on January 16th, ASW&D filed a collection action on behalf of Zimmer Motors against Dunn in Boone Circuit Court, alleging an unpaid debt of $14,648.99. (Doc. # 56-5 at 2). ASW&D cited the written confirmation purportedly signed by Dunn on January 27, 2017 as evidence of a contract between Dunn and Zimmer Motors, and attached a copy of the written confirmation to its state-court pleadings. (*Id.*).

The state-court proceedings did not go well for Dunn. Despite having been provided with the purportedly forged document on March 23, 2017, Dunn waited until November 2018 to produce an expert report showing that the signature was forged. (Doc. # 56-7). By then, it was too late; the state court denied Dunn's motion to amend pleadings to include a counterclaim against Zimmer Motors for the unlawful attempt to collect a debt using a forged document. (Docs. # 55-2 ¶ 22 and 56-1 ¶ 28). At that point, Dunn settled

4

the case for the full amount Zimmer Motors had requested in its complaint. (Docs. # 16-5 and 56-1 ¶ 32). On top of that, Dunn incurred attorney's fees, expert fees, and costs exceeding $9,000. (Doc. # 56-1 ¶ 33).

Following the unsuccessful state-court litigation, Dunn filed the instant lawsuit against Zimmer Motors and ASW&D on January 15, 2019, alleging that the Defendants' use of a forged document in the state-court action violated the FDCPA and the Kentucky Consumer Protection Act. (Doc. # 1). After Dunn amended his Complaint, (Doc. # 6), both Defendants filed motions to dismiss. (Docs. # 15 and 16). Those motions were denied in a November 19, 2019 Memorandum Opinion and Order. (Doc. # 20). Dunn has since voluntarily dismissed his claims against Zimmer Motors. (Doc. # 44). In October 2020, Dunn and ASW&D cross-moved for summary judgment on Dunn's FDCPA claim. In its Motion, ASW&D argues that summary judgment is appropriate because the Court lacks Article III standing and because Plaintiff's claim is time-barred. (Doc. # 55-1 at 10, 15-18). In addition, ASW&D maintains that it is not liable because it is not a "debt collector" within the meaning of the FDCPA and the debt at issue is not a qualifying "consumer debt" under the FDCPA. (*Id.* at 1-15). Neither party makes mention of the state-law claim. Each party has filed response and reply briefs. (Docs. # 59, 60, 62, and 63). Accordingly, the Motions for Summary Judgment are ripe for the Court's review.

### III. ANALYSIS

#### A. Standard of Review

Summary judgment is appropriate when the record reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists where "the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The "moving party bears the burden of showing the absence of any genuine issues of material fact."  *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).  Once a party files a properly-supported motion for summary judgment, by either affirmatively negating an essential element of the non-moving party's claim or establishing an affirmative defense, "the adverse party must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (internal quotation marks omitted).  However, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient."  *Id*. at 252.

The Court must "accept [the non-moving party's] evidence as true and draw all reasonable inferences in his favor."  *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 255).  The Court may not "make credibility determinations" or "weigh the evidence when determining whether an issue of fact remains for trial."  *Id*. (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001)).  "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Back v. Nestle USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251-52).  If there is a dispute over facts that might affect the outcome of the case under governing law, the entry of summary judgment is precluded.  *Anderson*, 477 U.S. at 248.

When, as in this case, the parties have cross-moved for summary judgment, "[t]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."

6

*Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 391 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

### B. Article III Standing

In the section of its brief setting forth the standard of review, ASW&D argues that there is no justiciable case or controversy because Dunn lacks standing to bring suit.[1] (Doc. # 55-1 at 9-10). For there to be standing, the plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016). "Moreover, the injury in fact must be both '(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'" *Buchholz v. Tanick*, 946 F.3d 855, 861 (6th Cir. 2020) (alterations omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Plaintiff has demonstrated all three elements of standing. With respect to the concrete injury requirement, it is undisputed that Dunn paid Zimmer Motors the full amount requested in the state-court complaint in order to settle the debt-collection action. The settlement payment was in turn directly traceable to ASW&D's use of an allegedly forged document, which strengthened Zimmer Motors' case against Dunn and arguably compelled Dunn to settle the contested debt. Review of the state-court pleadings leaves little doubt that the allegedly forged written confirmation of payment was an integral aspect of the breach-of-contract case against Dunn, and thus its use in the state-court litigation gave Zimmer Motors a distinct advantage. The redressability element is also

---

[1] ASW&D throughout its briefing makes arguments that do not match the headers under which they are located. The Court notes that arguments buried within unrelated sections of a brief are not properly presented. *See United States v. Osborne*, 807 F. App'x 511, 523 (6th Cir. 2020).

7

met, as Dunn's loss of funds at the hands of ASW&D can easily be redressed by a money judgment in Dunn's favor.

As ASW&D correctly points out, Dunn does not dispute the $14,648.99 cost of repairing the Jeep or that he received a check in that amount from his insurance company. Dunn nonetheless disputes that he owed that amount because of the losses he suffered as a result of the unreasonable time it took Zimmer Motors to repair the Jeep. In particular, Dunn has testified to the inconvenience caused by the loss of use of his vehicle for several months and has provided evidence of rental car expenses totaling at least $426 during the time the Jeep was being repaired. (Docs. # 54-1 at 69, 55-3 at 29, and 56-1 ¶¶ 20, 31). Loss of use damages, even in small amounts, have been held sufficient to confer Article III standing. *See Van v. LLR, Inc.*, 962 F.3d 1160, 1163-64 (9th Cir. 2020) (collecting cases). Moreover, Dunn spent $1,192.50 to retain a handwriting expert in an attempt to establish the falsity of the document submitted by Zimmer Motors in the state-court litigation. (Doc. # 56-1 ¶ 33). The evidence of loss of use damages and the payment of expert fees is sufficient to meet Plaintiff's burden of showing concrete injury traceable to ASW&D's conduct.

The Sixth Circuit's decision in *Buchholz v. Tanick* does not require a different result. In *Buchholz*, the plaintiff alleged that a debt collector had violated the FDCPA by sending letters that falsely created the impression that a lawsuit was imminent. 946 F.3d at 860. Although the plaintiff was never sued, he claimed that he suffered harm in the form of fear and anxiety from the threat of a lawsuit. *Id.* at 863. The court upheld the dismissal of the plaintiff's claim for lack of standing, holding that mere anxiety and fear about being sued in the future does not constitute a cognizable Article III injury. *Id.* at

8

865. However, unlike in *Buchholz*, the plaintiff here was in fact sued and, in the process, has paid thousands of dollars in damages and fees.

ASW&D also relies upon *Buchholz* to argue that Dunn's injury is self-inflicted and thus not traceable to Defendant's conduct. The plaintiff in *Buchholz* failed to meet the traceability standard because he did not dispute that he owed the debts sought to be collected. The Sixth Circuit observed that the cause of Buchholz's alleged harm "falls squarely on Buchholz because *he* chose not to pay his debts—and now fears the consequences of his delinquency." *Id.* at 867. Here, in contrast, Dunn has maintained all along that he does not owe the amount Zimmer Motors sued him for. Thus, Zimmer Motors' lawsuit, not Dunn's inaction, is what caused Dunn to pay the full amount on the debt. The Court therefore has jurisdiction to decide this case.

  **C.**  **ASW&D's Motion for Summary Judgment**

    ***1.***  ***Whether ASW&D is a "debt collector" under the FDCPA***

Summary judgment is warranted for ASW&D because the record shows conclusively that ASW&D is not a "debt collector" as that term is defined in the FDCPA. Not all who collect debts are subject to the restrictions contained in the FDCPA. Rather, § 1692e of the statute applies only to a "debt collector," defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In cases such as this one, in which a law firm collects a debt for a client, "a plaintiff must show that the attorney or law firm collects debts as a matter of course for its clients or for some clients, or collects debts as a substantial, but not

principal, part of his or its general law practice." *Schroyer v. Frankel*, 197 F.3d 1170, 1176 (6th Cir. 1999). Plaintiff has not made this showing.

ASW&D has presented evidence indicating that debt collection is not a "substantial" part of ASW&D's practice and that it did not collect debt for Zimmer Motors "as a matter of course." *Id.* ASW&D's attorney of record in the state-court collection action, Scott Guenther, has submitted an affidavit in which he avers that "[t]he collection of accounts on behalf of business clients is a very small percentage (less than 5%) of the affiant's practice as well as that of the practice of ASW&D." (Doc. # 55-2 at ¶¶ 2-3).

Such a low percentage of debt collection cases militates against a finding that ASW&D is a debt collector within the meaning of the FDCPA. For example, the Sixth Circuit in *Schroyer* held that an attorney was not a "debt collector" for FDCPA purposes when 7.4% of his practice and 2% of his firm's overall practice consisted of debt collection cases. 197 F.3d at 1176. District courts have similarly concluded that a law firm that collects debt in around 7% of its cases falls short of qualifying as a "debt collector" under the FDCPA. *See Burke v. Lawrence & Lawrence, PLLC*, No. 3:15-cv-00861, 2018 WL 1440837, at *4-5 (W.D. Ky. Mar. 22, 2018); *Gauntner v. Doyle*, 554 F. Supp. 2d 779, 783 (N.D. Ohio 2008).

To be sure, a law firm may be a debt collector in the eyes of the statute "even where debt collection takes up a minor portion of a law practice" in cases "where the defendant has an 'ongoing relationship' with a client whose activities substantially involve debt collection." *Schroyer*, 197 F.3d at 1176 (quoting *Stojanovski v. Strobl & Manoogian, P.C.*, 783 F. Supp. 319, 322 (E.D. Mich. 1992)). Yet, Guenther swears in his affidavit that

10

he was originally retained by Zimmer Motors not for debt collection, but for advice regarding "general business and employment matters." (*Id.* ¶ 3).

In his brief, Plaintiff points to two pieces of evidence, neither of which creates a genuine issue of material fact regarding ASW&D's status as a debt collector. First, Plaintiff argues that ASW&D admitted to being a debt collector when it failed to timely respond to Plaintiff's request for admission. (Doc. # 56 at 12-13). Plaintiff's request for admission reads as follows:

> Admit that ASW&D is a "debtor collector" as that term is defined in 15 U.S.C. [§] 1692a(4) [sic], to the extent that it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due its clients.

(Doc. # 56-10 at 2). Although ASW&D denied Plaintiff's requested admission, it concedes that it did so nearly two months after the conclusion of the 30-day response period. (Doc. # 60 at 5). Under Federal Rule of Civil Procedure 36(a)(3), "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." ASW&D cites the coronavirus pandemic as the reason for its tardiness and asks the Court to excuse its default under the Rules. (*Id.* at 5-6). Plaintiff, on the other hand, insists that "[b]ecause it is undisputed that ASW&D's response was untimely and the request thereby deemed admitted, ASW&D is, for the purposes of this case, deemed to be a debt collector as that term is defined in 15 U.S.C. [§] 1692a(6)." (Doc. # 56 at 13-14).

To the extent ASW&D made an admission by default, the Court will deem that admission withdrawn and decide summary judgment on the merits. The Sixth Circuit has recognized district courts' "considerable discretion over whether to permit withdrawal or

11

amendment of admissions." *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 154 (6th Cir. 1997) (quoting *Am. Auto. Assoc. v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1119 (5th Cir. 1991)). The result is that "the failure to respond in a timely fashion does not require the court automatically to deem all matters admitted." *United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009) (quoting *Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1312 (8th Cir. 1983)). This discretionary authority is grounded in Rule 36(b), which provides that a district court may, on motion, "permit[] the admission to be withdrawn or amended" if doing so "[1] would promote the presentation of the merits of the action and [2] if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." *See Kerry Steel*, 106 F.3d at 154.

While ASW&D has not formally moved to withdraw its admission, "a formal motion is not always required" and instead "may be imputed from a party's actions, 'including the filing of a belated denial.'" *Petroff-Kline*, 557 F.3d at 293-94 (quoting *Chancellor v. City of Detroit*, 454 F.Supp.2d 645, 666 (E.D. Mich. 2006)). Accordingly, ASW&D's overdue response effectively serves as a motion to withdraw its admission, a motion which will be granted for the reasons discussed below.

Permitting withdrawal of the admission in this case would satisfy each of Rule 36(b)'s twin requirements: presentation of the merits and absence of prejudice. "The first prong of the test articulated in Rule 36(b) is satisfied 'when upholding the admission would practically eliminate any presentation on the merits of the case.'" *Clark v. Johnston*, 413 F. App'x 804, 818 (6th Cir. 2011) (quoting *Riley v. Kurtz*, 194 F.3d 1313, 1999 WL 801560, at *3 (6th Cir. 1999) (unpublished table decision)). That is the case here, as the effect of

ASW&D's admission is to make it virtually impossible to argue that it is not a "debt collector" as defined by the FDCPA. As for the second requirement, Plaintiff has not demonstrated prejudice of the sort required by Rule 36(b). "[T]he prejudice contemplated by Rule 36(b) is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth. Prejudice under Rule 36(b), rather, relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." *Kerry Steel*, 106 F.3d at 154 (alteration and citations omitted). Here, ASW&D's belated response to Plaintiff's request for admission came on May 13, 2020, (Doc. # 56-10), well before the end of fact discovery on August 31, 2020, (Doc. # 42). Plaintiff therefore had ample time after May 13, 2020 to gather facts that might create a genuine dispute as to ASW&D's status as a debt collector. The Sixth Circuit employed similar reasoning in *Clark*, where it upheld the district court's grant of the defendants' motion to withdraw an admission because the plaintiff "had plenty of time during the discovery process to introduce other evidence that would be proper for the court to consider in regard to the issue of qualified immunity." 413 F. App'x at 819.

The case cited by Plaintiff, *Turk v. CitiMortgage*, No. 05-70386, 2005 WL 2090888 (E.D. Mich. Aug. 29, 2005), is distinguishable. (Doc. # 56 at 13). In *Turk*, the court granted summary judgment for the defendant based on the plaintiff's failure to respond to the defendant's requests for admission. *Id.* at *4. In contrast to the present case, in which ASW&D eventually submitted a late response, the defaulting party in *Turk* never responded and otherwise failed to move to withdraw its admission. Thus, this case more closely resembles *Petroff-Kline*, discussed above, where the Sixth Circuit held that the district court was justified in forgiving a party's late response to the opposing party's

13

request for admission. 557 F.3d at 293-94. The ruling in this case and in *Petroff-Kline* reflects the longstanding view that "[d]eciding dispositive issues against a party because of a missed deadline does not further the interests of justice." *United States v. $30,354.00 in U.S. Currency*, 863 F. Supp. 442, 445 (W.D. Ky. 1994) (allowing party to withdraw admissions under Rule 36(b)); *accord Bell v. Konteh*, 253 F.R.D. 413, 415 (E.D. Mich. 2008) (noting the preference for deciding cases on the merits in excusing default under Rule 36). For these reasons, Plaintiff cannot rely on ASW&D's purported admission to create a dispute of fact on the issue of "debt collector" liability under the FDCPA.

Second, Plaintiff maintains that ASW&D admitted to being a debt collector when it sent Plaintiff a demand letter that included a disclaimer stating: "[t]his law firm is a debt collector attempting to collect this debt for our client and any information obtained will be used for that purpose." (Doc. # 56-2). ASW&D also attached a similarly-worded disclaimer to its state-court complaint. (Doc. # 56-5 at 4).

Contrary to Plaintiff's contention, the fact that ASW&D self-identified as a debt collector does not make it one under the statute. This appears to be the prevailing view among courts that have encountered the issue. *See, e.g.*, *JP Morgan Chase Bank, N.A. v. Horvath*, 862 F. Supp. 2d 744, 755 (S.D. Ohio 2012); *Golliday v. Chase Home Fin., LLC*, 761 F. Supp. 2d 629, 636 (W.D. Mich. 2010); *Prince v. NCO Fin. Servs.*, 346 F. Supp. 2d 744, 751 (E.D. Pa. 2004); *cf. Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 334 (4th Cir. 2012) (per curiam) ("The FDCPA defines consumer debt, not a debt collector's disclaimer."). The Sixth Circuit has furthermore refused to penalize parties for proactively including FDCPA-required disclaimers in the event their conduct is later found to fall within the scope of the statute. *See Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 400

(6th Cir. 1998). As one court has explained, a law firm in ASW&D's position faces a "Hobson's choice"—risk admitting debt collector status or risk failing to comply with the FDCPA's disclaimer requirement in 15 U.S.C. § 1692e(11). *Golliday*, 761 F. Supp. 2d at 636 (quoting *Chomilo v. Shapiro, Nordmeyer & Zielke, LLP*, No. 06-3103, 2007 WL 2695795, at *6 (D. Minn. Sept. 12, 2007)). The Court finds the reasoning in the above cases persuasive. Accordingly, ASW&D's statements in its disclaimers do not create a dispute of fact regarding whether ASW&D is a debt collector within the meaning of the FDCPA.

Because the undisputed evidence indicates that ASW&D does not regularly engage in debt collection, and does not regularly collect debt on behalf of Zimmer Motors, no reasonable jury could conclude that ASW&D is a "debt collector" subject to liability under the FDCPA. For this reason, Plaintiff cannot hold ASW&D liable under the statute. ASW&D's Motion for Summary Judgment is accordingly **granted**.[2]

### D. Plaintiff's Motion for Summary Judgment

Plaintiff cross-moves for summary judgment, arguing not only that summary judgment should be denied for ASW&D but that Plaintiff should get summary judgment on his FDCPA claim. (Doc. # 56). However, because Plaintiff has failed to establish a dispute of fact regarding an element of his FDCPA claim against ASW&D, it follows that Plaintiff is not entitled to summary judgment on that claim. Thus, Plaintiff's Motion for Summary Judgment is **denied**.

---

[2] Because summary judgment is warranted on the ground that ASW&D is not a qualifying "debt collector" within the scope of the FDCPA, the Court need not reach the remainder of Defendant's arguments in support of summary judgment.

**E.     Plaintiff's State-Law Claim**

Having dismissed Plaintiff's federal claim under the FDCPA, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claim brought under the Kentucky Consumer Protection Act.  "[A] district court 'may' decline to exercise jurisdiction if 'the district court has dismissed all claims over which it has original jurisdiction.'"  *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) (internal parentheses omitted) (quoting 28 U.S.C. § 1367(c)(3)).  Although this determination is formally discretionary, the Sixth Circuit has stated "as a rule of thumb" that "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims."  *Id.*  The Supreme Court has also recently observed that "[w]hen district courts dismiss all claims independently qualifying for the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims."  *Artis v. District of Columbia*, 138 S. Ct. 594, 597-98 (2018).

This case does not present any of the "unusual circumstances" identified in *Musson* that warrant the exercise of supplemental jurisdiction.  89 F.3d at 1255.  For instance, there does not appear to be any reason why this case could not have been brought in state court, and there is no evidence that the parties would suffer prejudice from a delay in deciding the state-law claim.  *See id.* at 1256.  Nor does the resolution of the federal claim necessarily affect the resolution of the state claim.  *See id.*  Indeed, district courts within the Sixth Circuit routinely decline to assert supplemental jurisdiction after dismissing a plaintiff's FDCPA claim.  *See, e.g.*, *Rogers v. J.P. Morgan Chase Bank N.A.*, 466 F. Supp. 3d 791, 793 (N.D. Ohio 2020); *Myers v. Asset Acceptance LLC*, 750 F. Supp. 2d 864, 870 (S.D. Ohio 2010); *Moya v. Hocking*, 10 F. Supp. 2d 847, 853 (W.D.

16

Mich. 1998). Moreover, the parties' attention throughout this litigation has centered on the federal claim rather than the state-law claim, a fact this Court has previously found significant in deciding to decline supplemental jurisdiction. *See Boden v. St. Elizabeth Med. Ctr., Inc.*, 404 F. Supp. 3d 1076, 1095 (E.D. Ky. 2019). Therefore, the remaining state-law claim will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Plaintiff may refile this claim in the appropriate state court.

### IV.    CONCLUSION

Accordingly, for the reasons set forth herein, **IT IS ORDERED** as follows:

(1)    The Motion for Summary Judgment filed by Adams, Stepner, Woltermann, & Dusing, PLLC (Doc. # 55) is **GRANTED**;

(2)    The Motion for Summary Judgment filed by Plaintiff Patrick Dunn (Doc. # 56) is **DENIED**;

(3)    Plaintiff's FDCPA claim (Count II) is **DISMISSED WITH PREJUDICE**;

(4)    Plaintiff's remaining claim under the Kentucky Consumer Protection Act (Count I) is **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3); and

(5)    This matter is **STRICKEN** from the Court's active docket.

A judgment in favor of ASW&D will be entered contemporaneously herewith.

This 4th day of August, 2021.



Signed By:
*David L. Bunning*   DB
United States District Judge

J:\DATA\ORDERS\Cov2019\19-4 MOO re MSJs.docx